UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EUGENE PALLISCO,

    Plaintiff,

v.

HURON TOWNSHIP, HURON
TOWNSHIP LOCAL DEVELOPMENT
FINANCE AUTHORITY, LESLIE MEYERS,
and DAVID NIELSEN,

    Defendants.

_____/

Case No. 04-75059

HONORABLE AVERN COHN

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS.

### I. Introduction.

This is a civil rights case arising from a land contract sale of property in Huron Township, Wayne County, Michigan. Plaintiff Eugene Pallisco (Pallisco) claims that Defendants David Nielsen (Nielsen), Huron Township (Huron), Huron Township Zoning Administrator Leslie Meyers (Meyers), and the Huron Township Local Development Finance Authority (LDFA) conspired to deprive him of his property in violation of the Constitution.

Palllisco sets forth the following claims in the First Amended Complaint:

Count 1: conspiracy to effectuate a taking of property without compensation in violation of the Fifth Amendment against all defendants;

Count 2: conspiracy to deprive plaintiff of property without due process in violation of the Fourteenth Amendment against all defendants;

Count 3: malicious prosecution in violation of the Fourteenth Amendment against Huron

and the LDFA.[1]

Before the Court are separate motions to dismiss for failure to state a claim upon which relief can be granted by (1) Huron, the LDFA and Meyers, and (2) Nielsen. For the reasons state below, the motions are GRANTED.[2]

## II. Background.[3]

On November 13, 1999, Pallisco entered into a purchase agreement with Nielsen for unimproved real property (Property) in Huron Township. During a due diligence period, Nielsen provided Pallisco with environmental reports regarding the Property prepared by Applied Science & Technology, Incorporated (ASTI). Nielsen also provided Pallisco with a copy of a Phase I Environmental Site Assessment (Nielsen Phase I). The reports cited no significant environmental concerns.

On or about March 20, 2000, Pallisco and Nielsen closed on the Property by execution of a land contract. Pallisco began construction on the Property, which he intended to use for temporary storage of containerized cargo. During construction of a road and parking lot, a contractor discovered a significant flooding problem, though construction continued. On April 7, 2000, however, a Huron building inspector, Vince Pacheco, issued a stop work order because a site plan allegedly had not been filed with Huron.

In May, 2000, Pallisco listed the Property for sale because of the construction

---

[1] In his papers, Pallisco describes Count 3 as more than just a malicious prosecution claim. This contention will be addressed.

[2] At a hearing on the motions to dismiss in December, 2005, the Court ordered plaintiff to file an amended complaint. Plaintiff did so, defendants filed supplemental papers, and plaintiff responded.

[3] The background is gleaned from the First Amended Complaint (complaint).

2

delay and because the Property no longer fit his purpose. In July, 2000, Huron issued a Misdemeanor Uniform Law Citation (Citation) against Pallisco alleging that he had failed to secure the proper construction permits for improvement of the Property, and that the construction had caused flooding on the Property. It is unclear who signed the Citation. Pallisco did not receive notice of the Citation until December, 2000.

Following issuance of the citation, Pallisco discovered that the Property may be a wetland under Michigan law. The proceedings on the Citation were repeatedly adjourned by consent of the parties while Pallisco examined his options for the Property and its potential classification as a protected wetland. Pallisco's options included submission and approval of a corrected site plan, or remediation.

In March, 2001, Pallisco attempted to file a site plan for the Property with Huron. Pallisco met with Meyers, who refused to accept the site plan for filing. Meyers informed Pallisco that she would not review any site plan submitted by Pallisco for the Property. While discussing the Citation in early summer 2001, Huron asserted that Pallisco's road construction caused the flooding on the Property and adjoining land. Pallisco says some evidence existed that the Property had always been a wetland despite representations made by Nielsen and the environmental reports. Pallisco stopped payments to Nielsen on the land contract pending resolution of the Property problems.

On July 3, 2001, Nielsen foreclosured on the Property by filing an action in Wayne County Circuit Court. Pallisco brought counter-claims against Nielsen. In August, 2001, the LDFA contacted Pallisco to find out his asking price for the Property; negotiations ensued. During the negotiations, the LDFA indicated that Huron would dismiss the Citation against Pallisco as part of the sale.

3

Pallisco and the LDFA exchanged drafts of a sales contract (Purchase Agreement) in August, 2001. On August 22, 2001, the LDFA confirmed that Huron would dismiss the Citation. Pallisco and the LDFA entered into a Purchase Agreement on November 16, 2001. The closing date was set for December 4, 2001. The closing was contingent on completion of a Phase I Environmental Study (Huron Phase I). Because the Huron Phase I was not completed in time, the closing date was pushed back. Pallisco made numerous demands to expedite the closing, which the LDFA continued to stall. Nielsen and Pallisco delayed pursuing their litigation in anticipation of the sale to the LDFA.

On December 27, 2001, the LDFA provided Pallisco with a copy of the completed Huron Phase 1. The LDFA cited three potential problems with the Property: potential storage tanks, slag material, and potential wetland conditions. Initially the LDFA sought to conduct a Phase II or wetlands survey on the Property. On January 4, 2002, the LDFA informed Pallisco that it would not be purchasing the Property based on the Phase I Study.

To keep the deal alive, the LDFA sought permission to enter the Property to perform a preliminary wetland inspection (LDFA Wetland Inspection). Pallisco granted the permission on January 11, 2002, on the condition that the LDFA provide Pallisco with a copy of the LDFA Wetland Inspection. The LDFA Wetland Inspection concluded that the Property contained wetlands under Michigan Department of Environmental Quality jurisdiction. The LDFA decided, once again, not to purchase the property. On March 14, 2002, the LDFA provided Pallisco with the LDFA Wetland Inspection

Following the LDFA's decision not to purchase the Property, the litigation between Nielsen and Pallisco resumed. The Circuit Court granted summary disposition

to Nielsen in February, 2002; the Michigan Court of Appeals reversed that judgment and remanded the case for trial. While preparing for trial, Pallisco hired a wetlands expert. The expert discovered a thirty-six inch diameter underground pipe discharging a significant amount of water onto the Property. The expert determined that the pipe terminated on adjoining land, was not readily apparent, explained the flooding on the Property, and supported the idea that wetland conditions on the Property were artificially created.

In February, 2003, the Circuit Court entered a final judgment in the Nielsen and Pallisco case after both parties agreed to accept the results of a court mandated case evaluation. Under the evaluation, the Circuit Court ordered Pallisco to pay Nielsen $25,000 and Nielsen took title to the Property. Pallisco appealed the final judgment, arguing that the court improperly returned possession of the Property to Nielsen. The Michigan Court of Appeals denied leave to appeal in February, 2004.

On or about March 3, 2004, only weeks after the Michigan Court of Appeals' decision, Nielsen conveyed title to the Property to the LDFA by warranty deed. The LDFA agreed to buy the Property for $175,000, $25,000 less than the LDFA had agreed to pay Pallisco. Construction on the Property began on the Property, presumably by the LDFA. Pallisco filed the suit against the defendants on December 28, 2004.

## III. Discussion

### A. Legal Standard

A FED. R. CIV. P. 12(b)(6) motion seeks dismissal for a plaintiff's failure to state a claim upon which relief can be granted. "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and

determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001). "To survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n., 176 F.3d 315, 319 (6th Cir. 1999) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)).

### B. Analysis.

#### 1. Introduction.

A cause of action under 42 U.S.C. 1983 requires the plaintiff to show: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was caused by someone acting under color of state law. Perry v. McGinnis, 209 F.3d 597, 603 (6th Cir. 2000). Pallisco asserts a deprivation of his property rights through a government taking and without due process, and malicious prosecution.

#### 2. Counts 1 & 2–Deprivation of Property Without Due Process.

##### a. Pallisco's Claims.

###### i. Background.

The claims and relevant facts in Counts 1 and 2 are similar, thus they will be considered jointly. Both are asserted against all defendants. There are only slight differences. Count 2 alleges that the defendants violated due process in depriving Pallisco of his property, whereas Count 1 alleges that the defendants took his property under the Takings Clause without adequate compensation in violation of due process. Each count seeks damages for the same loss.

6

### ii. Count 1.

The complaint asserts that the defendants entered into an agreement to push Pallisco out of the Purchase Agreement with the LDFA and otherwise interfere with his property rights. The complaint says Michigan law permits Huron and the LDFA to condemn, purchase, lease, or otherwise dispose of property, but that doing so here potentially would have required payment to Nielsen and Pallisco, or could have exposed a municipal drain flooding the Property, a problem Huron wanted to avoid. The complaint says Huron wanted the Property as a wetland because creating a new wetland would permit it to develop existing wetlands. The complaint says Meyers ensured the continued frustration of Pallisco's purposes by refusing to review a site plan to depress the value of the Property. Additionally, the complaint says Neilsen agreed to facilitate the avoidance of the condemnation procedures by agreeing to sell the Property for a depressed price. The complaint also says Huron and the LDFA had a de facto policy of deliberate indifference to individuals such as Pallisco.

### iii. Count 2.

The complaint asserts that Pallisco was denied due process by the defendants because they deprived him of the ownership in, right to build on, and his right to relocation assistance from the Property,[4] in violation of the Fourteenth Amendment. The complaint says the LDFA entered into the Purchase Agreement in bad faith and with an ulterior purpose, and that Huron and the LDFA used the pending criminal charges arising from the Citation as a bargaining tool during negotiations. The complaint says the LDFA used environmental reports as a pretext for cancelling the

---

[4] A person who has property taken by the government by eminent domain may be entitled to relocation assistance. M.C.L. § 125.2151, et seq.

Purchase Agreement, as the LDFA purchased the property from Nielsen later. The complaint says Nielsen and Meyers' actions facilitated the due process violation. The complaint says Huron and the LDFA had a de facto policy of deliberate indifference to individuals such as Pallisco, thus causing a violation of his constitutional rights.

### b. Huron, the LDFA, and Meyers' Argument.

Huron, the LDFA, and Meyers (collectively "Huron Defendants") say Pallisco cannot sustain a claim for a taking in violation of the Fifth Amendment because he had no protected property interest in the Property. The Huron Defendants say Pallisco has not alleged governmental interference in his ownership of property because Pallisco lost the Property when he failed to pay Nielsen, and this dispute was fully and finally resolved in state court. Instead, the Huron Defendants say Pallisco only claims property interests such as "alienability," "the right to build," and the right to the issuance of a site plan, and these are not protected property rights under the Takings Clause. Alternatively, the Huron Defendants say if a property right did exist, Pallisco lost it when he lost ownership of the Property, not due to any action on their part or anyone acting under color of state law.

The Huron Defendants also say the complaint's allegation that Huron was reticent to condemn the land ignores the fact that a court, not Huron, would decide how much to pay each party with an ownership interest, that Huron would not have to double-pay if there were two parties with ownership interest, and that a condemnation action requires the same, if not more, public disclosure and scrutiny than a purchase of land, as both are subject to the Michigan Open Meetings Act.

The Huron Defendants say the entire alleged conspiracy is dependant upon Pallisco's failure to make payments on the land contract and Pallisco's decision to list

the property for sale on the open market. They say the alleged interest in keeping the wetland condition of the land secret is contradicted by the fact that the LDFA conducted numerous environmental studies on the land and gave a copy of the studies to Pallisco.

Finally, the Huron Defendants say Pallisco's claims about Meyers' actions in denying the site plan approval are not ripe for review because he never exercised his right to appeal the decision, thus it is not a final decision. Since Pallisco no longer owns the property, pursuing such a decision is futile.

### c. Nielsen's argument.

Nielsen argues that he is a private actor and not subject to a § 1983 claim, and that the complaint does not plead that he was a private actor acting under the color of state law. A private person is considered a state actor if that person exercises some right or privilege created by the state, acted together with or obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state. Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). Nielsen says Pallisco has made no allegations as to the existence of a sufficiently close relationship between Nielsen and Huron to support the conclusion that Nielsen acted with state authority. Wittstock v. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

Additionally, Nielsen says that the only acts attributed to him in the complaint are that he conveyed the Property to others when he held title to the Property, which only happened after waiting until the Michigan Court of Appeals confirmed his title to the Property by upholding the Circuit Court's judgment. While other paragraphs allege "improper acts," Nielsen says, there is no description of any such action. To establish a civil conspiracy, Nielsen says Pallisco must show "there was a single plan, that the alleged co-conspirator shared in the general conspiratorial objective, and that an overt

act was committed in furtherance of the conspiracy that caused injury to the claimant." Hooks v. Hooks, 771 F.2d 935, 944 (6th Cir. 1985). Conspiracy claims must be "pled with some degree of specificity," and vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir. 1987). Nielsen says Pallisco has alleged no specific facts to establish the existence of a common plan between the defendants, or that they acted in furtherance of the alleged plan.

### d. Pallisco's Response.

As to the Huron Defendants, Pallisco says he did have a protected property interest as a land contract vendee, and this interest was interfered with. Pallisco says he could have sold the property to the LDFA in late 2001, used the proceeds to pay off the land contract, and resolved the pending Citation brought by Huron. Instead, all defendants conspired to interfere with the Purchase Agreement and his property rights, Pallisco says. Eventually the LDFA and Nielsen exchanged the property directly. Furthermore, Huron and Meyers' refusal to review any site plan denied him due process, thereby preventing any construction on the Property. Given the proximity in time between Nielsen's foreclosure action and the LDFA's first contact with Pallisco about the Property, Pallisco says the conspiracy began before the foreclosure action was filed, thus the Michigan courts' resolution of the matter is non-binding.

Pallisco says that challenges regarding the various motives of each participant in the conspiracy alleged in the complaint is improper on a motion to dismiss, and the alleged motives only reflect alternative theories of the case. Pallisco says the argument that his failure to appeal the denial of the site plan ignores the fact that he was never even allowed to submit a site plan.

Even if any individual action was legal, Pallisco says that by entering into a conspiracy the actions became unlawful. A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, where those persons agree to inflict an injury upon another and where there is an overt act resulting in damages. Hampton v. Hanrahan, 600 F.2d 600, 620 (7th Cir. 1979).

As to Nielsen, Pallisco says that a private person who participates in a conspiracy with a state or local government official to violate a plaintiff's Fourteenth Amendment rights thereby acts under color of law and may be liable under § 1983. Dennis v. Sparks, 449 U.S. 24 (1980); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). The question before the Court is not whether Pallisco can prove the conspiracy, but whether his complaint sufficiently alleges the conspiracy. Pallisco says it does.

Regarding Nielsen's actions, Pallisco says Nielsen conspired to interfere with his agreement with the LDFA, thereby depriving him of any interest he had in the property, and that his involvement began long before he sold the property to the LDFA.

### c. Resolution.

As the owner of the Property throughout 2001, Pallisco did have a property interest protected by the Constitution. The complaint also adequately asserts facts bringing Nielsen's actions, combined with Huron and the LDFA alleged conduct, within the scope of state action for purposes of a motion to dismiss. The question is whether any of the defendants' actions deprived Pallisco of the Property. On this topic deficiencies in the complaint remain. The complaint fails to attribute specific conduct to specific individuals, and alleges that Huron, a township, and the LDFA, an economic

11

development corporation, committed numerous acts that could only be committed by agents or employees. This leaves Nielsen and Meyers wondering what they are alleged to have done. There are no specific allegations that Nielsen was involved in the collapse of the Pallisco-LDFA Purchase Agreement. There is only an allegation that Nielsen knew of the pending Purchase Agreement, which caused him to agree to postpone the foreclosure action for many months, a decision beneficial to Nielsen. There is no breach of contract claim or assertion that the LDFA breached the Purchase Agreement when it decided not to purchase the Property from Pallisco in January, 2002. The fact that the LDFA decided to buy the Property more than two years later from Nielsen does not mean that anything the LDFA did deprived Pallisco of the Property, and does not mean its decision not to purchase the Property from Pallisco is a constitutional violation. Meyers' only alleged contribution to the conspiracy was her failure to accept a site plan for the Property. Meyers' action led Pallisco to put the land up for sale, but had nothing to do with who purchased the Property. Something as simple as an alternative buyer coming forward to purchase the Property would have thwarted the entire goal of the alleged conspiracy.

The moment in time Pallisco focuses on was when the completion of the Purchase Agreement would have solved all of his problems by ridding himself of the Property, the Citation, and the foreclosure action. As described in the complaint, however, Pallisco's decision to stop paying on the land contract and put the Property up for sale, and the state court's disposition of the case with Nielsen, caused Pallisco's loss of the Property. Pallisco lost title to the Property after the Circuit Court entered a judgment against him based upon results of a case evaluation in Nielsen's foreclosure action. While Pallisco might not have lost as much money on the deal had the LDFA

12

purchased the Property in late 2001, the LDFA was under no obligation to do so. Pallisco only inferentially alleges that one or more people at Huron and/or the LDFA, Nielsen, and Meyers[5] at some point struck a deal whereby the LDFA would cancel the Purchase Agreement, and then buy the Property from Nielsen after adjudication of the foreclosure action, which turned out to be two years later. But even if such an agreement existed, it does not violate Pallisco's constitutional rights because he only lost the Property after being unable to find another buyer and losing in the Circuit Court, two things unattributable to any of the defendants.

### 3. Count III–Malicious Prosecution.

#### a. The Claim.

The complaint asserts that Huron issued the Citation against Pallisco without probable cause and as a pretext to harass him.[6] The complaint says Pallisco had defenses to the Citation, and that it was dismissed in his favor. The complaint says Huron's issuance of the Citation violated Pallisco's Fourth Amendment rights. The complaint says the LDFA's subsequent use of the Citation to better its bargaining position to purchase the Property deprived him of a liberty interest without due process under the Fifth and Fourteenth Amendments, and violated his Sixth Amendment right to a speedy and public trial. The complaint says Huron and the LDFA had a de facto

---

[5] Meyers refused to accept Pallisco's site plan about three months before the LDFA approached him about the Property. There is no allegation that Meyers was at all involved with the Purchase Agreement or even knew about it. And there is no allegation that Meyers' single decision to reject the site plan had anything to do with the LDFA's decision to back out of the Purchase Agreement. It is unclear what Pallisco asserts to be Meyers' role.

[6] It is unknown who signed the Citation. Malicious prosecution claims typically are against the officer issuing the citation.

13

policy of deliberate indifference to individuals like Pallisco.

### b. Huron and the LDFA's Argument.

First, Huron and the LDFA say that Pallisco's malicious prosecution claim violates the statute of limitations. Pallisco's claim accrued on September 26, 2001, the date that the Citation was administratively disposed of following a dismissal by the 34th District Court for Wayne County. This fact can be determined by taking judicial notice of a public record. Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999). A malicious prosecution claim accrues on the date the proceedings are terminated in favor of the plaintiff. Parisi v. Michigan Townships Ass'n, 123 Mich. App. 512 (1983). Under state law, a malicious prosecution claim has a statute of limitations of two years, M.C.L. § 600.5805(5), and a malicious prosecution claim under § 1983 has a statute of limitations of three years, Chippewa Trading Co. v. Cox, 365 F.3d 538, 543 (6th Cir. 2004). Pallisco filed his complaint on December 28, 2004, more than three years after this claim accrued according to the allegations of the complaint.

Second, Huron and the LDFA say there is no federally protected right from malicious prosecution, thus it cannot be the basis for a § 1983 claim. Third, Huron and the LDFA say the claim can only be brought against the person who made the decision to prosecute, and Pallisco has not alleged that Huron or the LDFA made that decision. Fourth, Huron and the LDFA say a § 1983 action for malicious prosecution cannot be sustained when there was probable cause to prosecute, and Pallisco admits that he did not file a site plan which formed the basis of the Citation. Finally, Huron and the LDFA say a § 1983 claim for malicious prosecution requires evidence of an independent constitutional violation arising from the decision to prosecute, and not merely a generic deprivation of liberty or trial rights. Pallisco was never incarcerated and the prosecution

14

was dismissed without a trial, thus no independent violation occurred.

### c. Pallisco's Argument.

Pallisco claims the Citation lacked probable cause, thus amounting to malicious prosecution, and that Huron and the LDFA's use of the Citation to induce him to enter into the Purchase Agreement with the LDFA is a constitutional violation, making Count 3 something more than a malicious prosecution charge. Pallisco makes two arguments as to why the statute of limitations for this claim has not been violated. First, to determine the date that the cause of action accrued would require fact-finding and an examination of documents outside of the pleadings. Huron and the LDFA, Pallisco says, support their chosen date by reference to a register of actions, whereas a motion under 12(b)(6) only tests the pleadings. A motion for summary judgment is proper to consider this argument, and the issue has not been fully briefed.

Second, Pallisco argues that there is no proof that he was served with the notice of dismissal after which the statute of limitations allegedly began to run, and that all defendants engaged in a conspiracy to obscure the malicious prosecution action from him by enticing him into the Purchase Agreement. Under the discovery rule, the statute of limitations begins when the plaintiff discovers the claim. Pallisco says disputed facts make the adjudication of the discovery rule unresolvable on a motion to dismiss.

Pallisco also argues that he must be given an opportunity, through discovery, to determine what role Huron and the LDFA played in the decision to issue the Citation, and provide evidence of how the decision was part of the conspiracy. Pallisco concludes by saying that Count 3 includes the manner in which the prosecution was used as improper leverage against the him in negotiations for the sale of the Property, thus violating his constitutional rights.

Resolution.

Ignoring the possible statute of limitations violation, Pallisco's complaint does not plead a violation of a constitutional right. Pallisco says he pled Count 3 as something more than a malicious prosecution charge, claiming that Huron and the LDFA's use of the Citation as a bargaining chip furthered the conspiracy to deprive him of property. It appears, however, that all Huron did was agree to dismiss the Citation as part of the Purchase Agreement. Even after the Purchase Agreement fell apart, Huron did not re-institute the dismissed Citation. A Huron employee, Pacheco, issued a stop work order, upon which the Citation was based due to Pallisco's failure to file a site plan. Pallisco's complaint does not assert that a site plan had been filed. Soon after Pacheco's order stopped him from developing the Property, Pallisco advertised the Property for sale. The LDFA contacted Pallisco because it was interested in buying the Property. Offering to dismiss the Citation as part of the negotiations does not implicate a constitutional right, and Pallisco did not have to negotiate with the LDFA. Agreeing to dismiss a citation does not violate a constitutional right.

## 6. Conclusion.

Accepting all factual allegations in the complaint as true, Pallisco does not state a claim upon which relief can be granted. Counts 1 and 2 do not allege that state action deprived him of his property interest, and Count 3 does not allege the violation of a constitutional right. The case is DISMISSED.

AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:
Detroit, Michigan

16